IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| KEVIN E. LOADER,<br><br>           Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>           Defendant. | CV 19-26-H-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Plaintiff Kevin E. Loader (Loader) brought this action to obtain judicial

review of the final decision of the Commissioner of the Social Security

Administration (Commissioner), denying his applications for disability benefits,

disability insurance benefits, and supplemental security income benefits under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381 *et seq.*

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g).  Venue

is proper given that Loader resides in Powell County, Montana.  29 U.S.C.

§ 1391(e)(1); L.R. 1.2(c)(3).  The parties have consented to have the undersigned

conduct all proceedings in this matter and enter judgment. (Doc. 10).

## BACKGROUND

Loader is 53 years old. (Doc. 6 at 1050). Loader has a high school education. (Doc. 6 at 1149). Loader has also completed one year of college courses. *Id.* Loader is a military veteran. (Doc. 6 at 1151). Loader served 9 1/2 years in the Navy and 5 years in the army. *Id.* Loader received a medical discharge from the military in 2010. (Doc. 6 at 1151-1152). Loader has past work experience as a correctional officer, a retail store sales associate, and a residential painter. (Doc. 6 at 1150, 1152-1155). Loader last worked in September 2011. (Doc. 6 at 1155).

The Veterans Administration (VA) assigned Loader a 30% disability rating in 2017. (Doc. 6 at 929-930). This 30% rating consisted of a 20% rating for back problems and a 10% rating for tinnitus. (Doc. 6 at 1532, 1892).

Loader filed his applications for Social Security disability benefits and supplemental security income benefits on April 29, 2013. (Doc. 6 at 396, 1043). Loader alleged that he became disabled on December 19, 2012. *Id.* Loader alleged that he became disabled due to compression fractures in his thoracic spine, depression and degenerative arthritis. (*See* Cause CV 15-38-H-JTJ, Doc. 11 at 202, 213; Doc. 6 at 427).

An administrative law judge (ALJ) conducted a hearing on Loader's applications for disability benefits and supplemental security income benefits on August 7, 2014. (Doc. 6 at 1043). The ALJ issued his decision on September 22, 2014. (Doc. 6 at 1051). The ALJ determined that Loader did not qualify for disability benefits or supplemental security income benefits because Loader possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy. (Doc. 6 at 1050-51).

Loader requested that the Administration Appeals Council (Appeals Council) review the ALJ's decision. (Doc. 6 at 964). The Appeals Council denied Loader's request for review. *Id.* The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Loader appealed the Commissioner's decision. *See* Cause CV 15-38-H-JTJ, Doc. 2. This Court affirmed the Commissioner's decision. *See* Cause CV15-38-H-JTJ, Doc. 15. Loader appealed.

The Ninth Circuit Court of Appeals affirmed this Court's decision in part, and reversed in part. *See Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018). The Ninth Circuit determined that the ALJ had committed two errors. The Ninth Circuit held that the ALJ had erred when he failed to consider the limitations imposed by Loader's depression in assessing Loader's residual

3

functional capacity.  The Ninth Circuit held that the ALJ had also erred when he presented a hypothetical question to the vocational expert that failed to account for the mental limitations imposed by Loader's depression.  *Id.* at 655.  The Ninth Circuit instructed this Court to remand the case to the Commissioner for further proceedings.  *Id.* at 656.  The Ninth Circuit directed the ALJ to re-assess Loader's residual functional capacity taking into consideration all of Loader's physical and mental impairments.  *Id.*  The Ninth Circuit also directed the ALJ to re-assess his findings at steps 4 and 5 of the evaluation process.  *Id.*

This Court remanded the case to the Commissioner for further proceedings on January 25, 2018.  (Doc. 20).  The ALJ conducted an administrative hearing on October 30, 2018.  (Doc. 6 at 864).  The ALJ received testimony from an impartial vocational expert and from Loader.  (Doc. 6 at 919).  The ALJ also considered Loader's applications for disability benefits filed on April 20, 2015, and on February 9, 2016.  (Doc. 6 at 857).

The ALJ issued his decision on December 27, 2018.  (Doc. 6 at 864-872).  The ALJ determined that Loader did not qualify for disability benefits, disability insurance benefits, or supplemental security income benefits because Loader had not been under a disability during the period from December 19, 2012, through the date of his decision.  (Doc. 6 at 858).  The ALJ concluded that Loader possessed

the residual functional capacity to perform jobs that existed in significant numbers in the national economy.   (Doc. 6 at 870-872).

Loader filed the present appeal challenging the ALJ's decision.  (Doc. 2). The matter has been fully briefed.  (Docs. 8, 12 and 13).  The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are:

1.  Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Does the claimant have an impairment that is severe or a combination of impairments that is severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.    Do any of the claimant's impairments "meet or equal" one of
       the impairments described in the listing of impairments in
       20 C.F.R. Part 220, Appendix 1?  If so, the claimant is
       disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§
       404.1520(d), 416.920(d).

4.    Is the claimant able to do any work that he or she has done in the
       past?  If so, the claimant is not disabled.  If not, proceed to step five.
       *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.    Is the claimant able to do any other work?  If so, the claimant is not
       disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§
       404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## BACKGROUND

### A.    ALJ's determination

At step one, the ALJ determined that Loader had not engaged in substantial

gainful activity since his alleged onset date of December 19, 2012.  (Doc. 6 at

860).

At step two, the ALJ found that Loader had the following severe

impairments: thoracic spine wedging at T6-8, thoracic and cervical degenerative

disc disease, depression, and obesity.  (Doc. 6 at 860).  The ALJ found that Loader

also had the following non-severe impairments: sleep apnea; hyperlipidemia;

trigger finger and tinnitus.  *Id.*

At step three, the ALJ found that Loader did not have an impairment, or

7

combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 6 at 861).

Before considering step four, the ALJ determined Loader's residual functional capacity. The ALJ determined that Loader possessed the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: 1) Loader is able to lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; 2) Loader is able to stand and walk for about 6 hours in an 8-hour workday; 3) Loader is able to sit for about 6 hours in an 8-hour workday; 4) Loader can alternate between sitting, standing and walking during normal work breaks occurring every 2 hours; 5) Loader can frequently climb ramps and stairs, balance, stoop, kneel and crouch; 6) Loader can occasionally crawl and climb ladders, ropes, and scaffolds; 7) Loader must avoid concentrated exposure to hazards including unprotected heights and dangerous machinery; 8) Loader cannot perform detailed or complex work tasks; 9) Loader can tolerate occasional interaction with 2-3 members of the public at one time; and 10) Loader can interact frequently with a single member of the public at one time. (Doc. 6 at 863).

At step four, the ALJ determined that Loader could not perform any of his past relevant work. (Doc. 6 at 870).

8

At step five, the ALJ presented a hypothetical question to the vocational expert. The ALJ asked the vocational expert to consider a hypothetical person with the same age, work experience and educational background as Loader who possessed the limitations described above. (Doc. 6 at 941-943). The ALJ asked the vocational expert whether the hypothetical person could perform any jobs that existed in significant numbers in the national economy. (Doc. 6 at 943). The vocational expert responded that such a hypothetical person could perform work as a officer helper, parking lot attendant and cleaner-housekeeper. (Doc. 6 at 942-943). The ALJ determined, based on the vocational expert's testimony, that Loader was not disabled. (Doc. 6 at 871).

### B.     Loader's Position

Loader argues that the Court should reverse the Commissioner's decision and award benefits or remand the case for further proceedings. (Doc. 2 at 5; Doc. 8 at 30). Loader argues that the Commissioner's decision should be reversed for the following reasons:

1.     The ALJ erred at step 2 when he failed to classify his depression as a severe impairment;

2.     The ALJ failed to provide sufficient reasons for discounting his testimony regarding the limiting effects of his depression; and

3.      The ALJ erred at step 5 by presenting a hypothetical question to the vocational expert that failed to include any limitations related to his depression and his Dupuytren's contracture.

(Doc. 8 at 5).

## C.      Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was free of legal error.

## DISCUSSION

## A.      ALJ's classification of Loader's depression

Loader argues that the ALJ's decision should be set aside because the ALJ failed to classify his depression as a severe impairment at step two of the evaluation process.  (Doc. 8 at 9-26).

Loader's argument may be summarily dismissed.  Loader has misread the ALJ's decision.  The record shows that the ALJ did, in fact, classify Loader's depression as a severe impairment at step 2.  (*See* Doc. 6 at 860).  The ALJ found that Loader had "intermittent depression" that could be "severe at times." (Doc. 6 at 870).

## B.      Loader's testimony regarding his Depression

Loader argues that the ALJ's decision should be set aside because the ALJ

10

failed to provide specific, clear and convincing reasons for discounting his testimony regarding the limiting effects of his depression. (Doc. 8 at 26-29).

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding limiting effects of his impairment is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of his symptoms only if the ALJ offers "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must identify the portion of the claimant's testimony that is not credible and the ALJ must describe the evidence that undermines the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings by the ALJ are not sufficient. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

11

Here, the ALJ stated that he had discounted Loader's testimony regarding the limiting effects of his depression for the following reasons.

First, Loader's medical records showed that his depression was generally mild and "intermittent" in nature. (Doc. 6 at 868, 870). In October 2012, two months before Loader's alleged onset date, Loader's depression was noted to be in remission. (Doc. 6 at 534-535, 867). Loader was "fully oriented" at that time and his "thought contents were normal." *Id.* Loader had "appropriate mood and affect," and his "attitude was cooperative." *Id.* Loader was assigned a global assessment functioning score of 61 at that time, which indicated only mild difficulties in social and work related functioning. *Id.*

Although Loader complained of depression in 2014, the depression was related to his inability to secure Social Security disability benefits. (Doc. 6 at 772, 867). The medical evidence in 2014 showed that Loader had "normal speech and a cooperative attitude," Loader had "linear," "organized" and "normal" thoughts, and Loader was "fully oriented" with an appropriate mood. (Doc. 6 at 772-773, 867).

In 2016, Loader reported to his treating physician Dr. James Meyer, M.D. that "his attitude [had] improved and he did not feel depressed." (Doc. 6 at 868, 1569). Dr. Meyer noted that Loader's depression had been limited to a "single

episode" up to that "point in time." *Id.*

Third, the ALJ noted that the mental assessments conducted by reviewing psychologists Robert Bateen, Peg Herman and Marsha McFarland in 2013 and in 2016 showed that Loader was able to manage his depression with medication, that Loader suffered no "significant cognitive or social problems" related to depression, and that Loader had "at most mild restriction[s] in maintaining concentration, persistence and pace." (Doc. 6 at 869-870).

Fourth, the ALJ noted that although Loader had complained of isolation due to depression at times, Loader had also reported that he was able to get along with others, spend time with friends and family, deal appropriately with authority, and live with others. (Doc. 6 at 862).

The reasons provided by the ALJ for discounting Loader's testimony regarding the limiting effects of his depression were specific, clear and convincing. No legal error occurred.

## C.   Hypothetical question presented to the vocational expert

Loader argues that the ALJ's decision should be reversed because the hypothetical that the ALJ presented to the vocational expert was legally deficient. Loader argues that the hypothetical was deficient because it failed to address the physical limitations related to the Dupuytren's contracture in his left hand, and it

13

failed to address the mental limitations related to his depression.

Hypothetical questions posed to a vocational expert must include all of the medical and vocational limitations of the claimant supported by substantial evidence in the record. *Thomas*, 278 F.3d at 956. A hypothetical question that fails to take into account all of the claimant's limitations is defective. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Opinions from a vocational expert that are based on a defective hypothetical question from the ALJ have "no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

### a.   Dupuytren's contracture

The record shows that Loader has a "mild" case of Dupuytren's disease with a "hand contracture of only 10-12 degrees." (Doc. 6 at 861). The record is void of any evidence showing that Loader's mild Dupuytren's contracture has "interrupted his work-related functioning." *Id.*

The ALJ nevertheless included limitations in his hypothetical that were designed to accommodate Loader's Dupuyten contracture. The ALJ stated that Loader "[s]hould avoid concentrated exposure to vibrations and extreme cold," and that Loader could not use his "upper left extremity" for gross motor skills on "a repetitious basis throughout an eight-hour day." (Doc. 6 at 940). The ALJ also

14

stated that Loader could only "lift, carry, push [and] pull 20 pounds occasionally, [and] ten pounds frequently." (Doc. 6 at 941). The ALJ's hypothetical was not defective.

### b.    Depression

When the Ninth Circuit remanded this case for further proceeding it directed the ALJ to address the mental limitations associated with Loader's depression. The Ninth Circuit directed the ALJ to account for those limitations when he assessed Loader's residual functional capacity and include those limitations in the hypothetical he presented to the vocational expert. *Loader*, 722 F. App'x at 655-656.

The ALJ has complied with the Ninth Circuit's directive. (*See* Doc. 6 at 868). Although Loader's medical records showed that his depression was intermittent with only "occasional exacerbation of symptoms," the ALJ nevertheless included mental limitations in the hypothetical that he presented to the vocational expert. (Doc. 6 at 863, 939-943). The ALJ stated that Loader's depression precluded him from performing complex and detailed tasks, and restricted the contacts he could have with the public. The ALJ stated that Loader could only have occasional contact with 2 to 3 members of the public at one time. *Id.* The ALJ's hypothetical was not defective.

15

## CONCLUSION

The ALJ's decision was supported by substantial evidence. The ALJ did not commit legal error.

## ORDER

1.     The Commissioner's decision to deny benefits to Loader is AFFIRMED.

2.     This case is DISMISSED with prejudice.

3.     The Clerk is directed to enter judgment accordingly.

DATED this 14th day of April, 2021.


_____
John Johnston
United States Magistrate Judge

16